IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANACOR PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ASCENT PHARMACEUTICALS, INC., | ) | |
| ZYDUS PHARMACEUTICALS (USA) INC., | ) | |
| CADILA HEALTHCARE LTD., APOTEX | ) | |
| INC., APOTEX CORP., AMNEAL | ) | |
| PHARMACEUTICALS LLC, PERRIGO | ) | |
| PHARMA INTERNATIONAL DAC, | ) | |
| PERRIGO COMPANY PLC, ALEOR | ) | |
| DERMACEUTICALS LIMITED, CIPLA | ) | |
| LIMITED, CIPLA USA, INC., AUROBINDO | ) | |
| PHARMA LIMITED, AUROBINDO | ) | |
| PHARMA USA, INC., TARO | ) | |
| PHARMACEUTICALS U.S.A., INC., AND | ) | |
| TARO PHARMACEUTICAL INDUSTRIES, | ) | |
| LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Anacor Pharmaceuticals, Inc. ("Anacor"), by its attorneys, for its Complaint, alleges as follows:

1. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code that arises out of each Defendant's filing of an Abbreviated New Drug Application ("ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture and sell a generic version of Kerydin® (TAVABOROLE) TOPICAL SOLUTION, 5% ("Kerydin"), prior to the expiration of U.S. Patent No. 9,459,938 ("the '938 patent"); U.S. Patent No. 9,566,289 ("the '289 patent");

U.S. Patent No. 9,566,290 ("the '290 patent"); and U.S. Patent No. 9,572,823 ("the '823 patent"). These four patents are referred to collectively herein as "the patents-in-suit."

2. Ascent Pharmaceuticals Inc. notified Anacor by letter dated September 12, 2018 ("Ascent's Notice Letter") that it had submitted to the FDA ANDA No. 212261 ("Ascent's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Ascent's ANDA Product") prior to the expiration of the patents-in-suit.

3. Zydus Pharmaceuticals (USA) Inc. notified Anacor by letter dated September 12, 2018 ("Zydus's Notice Letter") that it had submitted to the FDA ANDA No. 212294 ("Zydus's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Zydus's ANDA Product") prior to the expiration of the patents-in-suit.

4. Apotex Inc. notified Anacor by letter dated September 13, 2018 ("Apotex's Notice Letter") that it had submitted to the FDA ANDA No. 212236 ("Apotex's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Apotex's ANDA Product") prior to the expiration of the patents-in-suit.

5. Amneal Pharmaceuticals LLC notified Anacor by letter sent on September 13, 2018 ("Amneal's Notice Letter") that it had submitted to the FDA ANDA No. 212256 ("Amneal's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Amneal's ANDA Product") prior to the expiration of the patents-in-suit.

6.      Perrigo Pharma International DAC notified Anacor by letter dated September 14, 2018 ("Perrigo's Notice Letter") that it had submitted to the FDA ANDA No. 211848 ("Perrigo's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Perrigo's ANDA Product") prior to the expiration of the patents-in-suit.

7.      Aleor Dermaceuticals Limited notified Anacor by letter dated September 14, 2018 ("Aleor's Notice Letter") that it had submitted to the FDA ANDA No. 212188 ("Aleor's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Aleor's ANDA Product") prior to the expiration of the patents-in-suit.

8.      Cipla Limited notified Anacor by letter dated September 14, 2018 ("Cipla's Notice Letter") that it had submitted to the FDA ANDA No. 212224 ("Cipla's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Cipla's ANDA Product") prior to the expiration of the patents-in-suit.

9.      Aurobindo Pharma Limited notified Anacor by letter dated September 15, 2018 ("Aurobindo's Notice Letter") that it had submitted to the FDA ANDA No. 212115 ("Aurobindo's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Aurobindo's ANDA Product") prior to the expiration of the patents-in-suit.

10.      Taro Pharmaceuticals U.S.A., Inc. notified Anacor by letter dated September 17, 2018 ("Taro's Notice Letter") that it had submitted to the FDA ANDA No. 212215 ("Taro's ANDA"), seeking approval from the FDA to engage in the commercial

manufacture, use and/or sale of a generic tavaborole topical solution ("Taro's ANDA Product") prior to the expiration of the patents-in-suit.

11.    Ascent's Notice Letter, Zydus's Notice Letter, Apotex's Notice Letter, Amneal's Notice Letter, Perrigo's Notice Letter, Aleor's Notice Letter, Cipla's Notice Letter, Aurobindo's Notice Letter, and Taro's Notice Letter are collectively referred to herein as "Defendants' Notice Letters."  Ascent's ANDA, Zydus's ANDA, Apotex's ANDA, Amneal's ANDA, Perrigo's ANDA, Aleor's ANDA, Cipla's ANDA, Aurobindo's ANDA, and Taro's ANDA are collectively referred to herein as "Defendants' ANDAs."  Ascent's ANDA Product, Zydus's ANDA Product, Apotex's ANDA Product, Amneal's ANDA Product, Perrigo's ANDA Product, Aleor's ANDA Product, Cipla's ANDA Product, Aurobindo's ANDA Product, and Taro's ANDA Product are collectively referred to herein as "Defendants' ANDA Products."

12.    Upon information and belief, Defendants' ANDA Products are all drug products that are generic versions of Kerydin, containing the same or equivalent ingredients in the same or equivalent amounts.

## PARTIES

13.    Plaintiff Anacor is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 235 East 42nd Street, New York, New York 10017.

14.    Upon information and belief, defendant Ascent Pharmaceuticals Inc. ("Ascent") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 550 South Research Place, Central Islip, New York.  Upon information and belief, Ascent is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs for the U.S. market.

15. Upon information and belief, Ascent prepared and submitted Ascent's ANDA to the FDA.

16. Upon information and belief, Ascent knows and intends that upon approval of Ascent's ANDA, Ascent will manufacture and directly or indirectly market, sell, and distribute Ascent's ANDA Product throughout the United States, including in Delaware.

17. Upon information and belief, following any FDA approval of Ascent's ANDA, Ascent will distribute and sell Ascent's ANDA Product throughout the United States, including within Delaware.

18. Upon information and belief, defendant Zydus Pharmaceuticals (USA) Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 73 Route 31 North, Pennington, New Jersey 08534. Upon information and belief, Zydus Pharmaceuticals (USA) Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

19. Upon information and belief, defendant Cadila Healthcare Ltd. is a corporation organized and existing under the laws of the Republic of India, with its principal place of business at Zydus Tower, Satellite Cross Roads, Ahmedabad-380 015, Gujarat, India. Upon information and belief, Cadila Healthcare Ltd. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products through various operating subsidiaries, including Zydus Pharmaceuticals (USA) Inc.

20. Upon information and belief, Zydus Pharmaceuticals (USA) Inc. is a wholly owned indirect subsidiary of Cadila Healthcare Ltd. Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. are collectively referred to herein as "Zydus."

21.    Upon information and belief, Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. acted in concert to prepare and submit Zydus's ANDA to the FDA.

22.    Upon information and belief, Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. know and intend that upon approval of Zydus's ANDA, Cadila Healthcare Ltd. will manufacture Zydus's ANDA Product and Zydus Pharmaceuticals (USA) Inc. will directly or indirectly market, sell, and distribute Zydus's ANDA Product throughout the United States, including in Delaware.  Upon information and belief, Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Zydus's ANDA Product, and enter into agreements with each other that are nearer than arm's length.  Upon information and belief, Cadila Healthcare Ltd. participated in, assisted, and cooperated with Zydus Pharmaceuticals (USA) Inc. in the acts complained of herein.

23.    Upon information and belief, following any FDA approval of Zydus's ANDA, Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. will act in concert to distribute and sell Zydus's ANDA Product throughout the United States, including within Delaware.

24.    Upon information and belief, defendant Apotex Inc. is a corporation organized and existing under the laws of Canada with its principal place of business at 150 Signet Drive, Toronto, Ontario, Canada M9L 1T9.  Upon information and belief, Apotex Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Apotex Corp.

25.    Upon information and belief, defendant Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware with its principal place of

6

business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.    Upon information and belief, Apotex Corp. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

26.    Upon information and belief, Apotex Corp. is a wholly owned subsidiary of Apotex Inc.  Apotex Inc. and Apotex Corp. are collectively referred to herein as "Apotex."

27.    Upon information and belief, Apotex Inc. and Apotex Corp. acted in concert to prepare and submit Apotex's ANDA to the FDA.

28.    Upon information and belief, Apotex Inc. and Apotex Corp. know and intend that upon approval of Apotex's ANDA, Apotex Inc. will manufacture Apotex's ANDA Product and Apotex Corp. will directly or indirectly market, sell, and distribute Apotex's ANDA Product throughout the United States, including in Delaware.  Upon information and belief, Apotex Inc. and Apotex Corp. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Apotex's ANDA Product, and enter into agreements with each other that are nearer than arm's length.  Upon information and belief, Apotex Corp. participated in, assisted, and cooperated with Apotex Inc. in the acts complained of herein.

29.    Upon information and belief, following any FDA approval of Apotex's ANDA, Apotex Inc. and Apotex Corp. will act in concert to distribute and sell Apotex's ANDA Product throughout the United States, including within Delaware.

30.    Upon information and belief, defendant Amneal Pharmaceuticals LLC ("Amneal") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 400 Crossing Blvd., 3rd Floor, Bridgewater, New Jersey 08807.  Upon information and belief, Amneal is in the business of, among other things,

7

manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

31.    Upon information and belief, Amneal prepared and submitted Amneal's ANDA to the FDA.

32.    Upon information and belief, Amneal knows and intends that upon approval of Amneal's ANDA, Amneal will manufacture and directly or indirectly market, sell, and distribute Amneal's ANDA Product throughout the United States, including in Delaware.

33.    Upon information and belief, following any FDA approval of Amneal's ANDA, Amneal will distribute and sell Amneal's ANDA Product throughout the United States, including within Delaware.

34.    Upon information and belief, defendant Perrigo Pharma International DAC is a corporation organized and existing under the laws of Ireland with its principal place of business at Treasury Building, Lower Grand Canal St., Dublin 2 DO2 XN96 Ireland.  Upon information and belief, Perrigo Pharma International DAC is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

35.    Upon information and belief, defendant Perrigo Company plc is a corporation organized and existing under the laws of Ireland with its principal place of business at Treasury Building, Lower Grand Canal St., Dublin 2 DO2 XN96 Ireland.  Upon information and belief, Perrigo Company plc is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Perrigo Pharma International DAC.

36.    Upon information and belief, Perrigo Pharma International DAC is a wholly owned indirect subsidiary of Perrigo Company plc.  Perrigo Pharma International DAC and Perrigo Company plc are collectively referred to herein as "Perrigo."

37.    Upon information and belief, Perrigo Pharma International DAC and Perrigo Company plc acted in concert to prepare and submit Perrigo's ANDA to the FDA.

38.    Upon information and belief, Perrigo Pharma International DAC and Perrigo Company plc are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Perrigo's ANDA Product, and enter into agreements with each other that are nearer than arm's length.  Upon information and belief, Perrigo Company plc participated in, assisted, and cooperated with Perrigo Pharma International DAC in the acts complained of herein.

39.    Upon information and belief, following any FDA approval of Perrigo's ANDA, Perrigo Pharma International DAC and Perrigo Company plc will act in concert to distribute and sell Perrigo's ANDA Product throughout the United States, including within Delaware.

40.    Upon information and belief, defendant Aleor Dermaceuticals Limited ("Aleor") is a corporation organized and existing under the laws of the Republic of India with its principal place of business at Alembic Road, Vadodara, Gujarat, 390003, India.  Upon information and belief, Aleor is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

41.    Upon information and belief, Aleor prepared and submitted Aleor's ANDA to the FDA.

42. Upon information and belief, Aleor knows and intends that upon approval of Aleor's ANDA, Aleor will manufacture and directly or indirectly market, sell, and distribute Aleor's ANDA Product throughout the United States, including in Delaware.

43. Upon information and belief, following any FDA approval of Aleor's ANDA, Aleor will distribute and sell Aleor's ANDA Product throughout the United States, including within Delaware.

44. Upon information and belief, defendant Cipla Limited is a corporation organized and existing under the laws of the Republic of India with its principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai-400013, Maharashtra, India. Upon information and belief, Cipla Limited is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Cipla USA, Inc.

45. Upon information and belief, defendant Cipla USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 9100 S. Dadeland Blvd., Suite 1500, Miami, Florida 33156. Upon information and belief, Cipla USA, Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

46. Upon information and belief, Cipla USA, Inc. is a wholly owned subsidiary of Cipla Limited. Cipla Limited and Cipla USA, Inc. are collectively referred to herein as "Cipla."

47. Upon information and belief, Cipla Limited and Cipla USA, Inc. acted in concert to prepare and submit Cipla's ANDA to the FDA.

10

48.    Upon information and belief, Cipla Limited and Cipla USA, Inc. know and intend that upon approval of Cipla's ANDA, Cipla Limited will manufacture Cipla's ANDA Product and Cipla USA, Inc. will directly or indirectly market, sell, and distribute Cipla's ANDA Product throughout the United States, including in Delaware.  Upon information and belief, Cipla Limited and Cipla USA, Inc. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Cipla's ANDA Product, and enter into agreements with each other that are nearer than arm's length.  Upon information and belief, Cipla USA, Inc. participated in, assisted, and cooperated with Cipla Limited in the acts complained of herein.

49.    Upon information and belief, following any FDA approval of Cipla's ANDA, Cipla Limited and Cipla USA, Inc. will act in concert to distribute and sell Cipla's ANDA Product throughout the United States, including within Delaware.

50.    Upon information and belief, defendant Aurobindo Pharma Limited is a corporation organized and existing under the laws of the Republic of India with its principal place of business at Plot No. 2, Maitri Vihar, Ameerpet, Hyderabad – 500 038, Andhra Pradesh, India.  Upon information and belief, Aurobindo Pharma Limited is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Aurobindo Pharma USA, Inc.

51.    Upon information and belief, defendant Aurobindo Pharma USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6 Wheeling Road, Dayton, New Jersey 08810.  Upon information and belief, Aurobindo Pharma USA, Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

52.    Upon information and belief, Aurobindo Pharma USA, Inc. is a wholly owned subsidiary of Aurobindo Pharma Limited.  Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. are collectively referred to herein as "Aurobindo."

53.    Upon information and belief, Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. acted in concert to prepare and submit Aurobindo's ANDA to the FDA.

54.    Upon information and belief, Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. know and intend that upon approval of Aurobindo's ANDA, Aurobindo Pharma Limited will manufacture Aurobindo's ANDA Product and Aurobindo Pharma USA, Inc. will directly or indirectly market, sell, and distribute Aurobindo's ANDA Product throughout the United States, including in Delaware.  Upon information and belief, Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Aurobindo's ANDA Product, and enter into agreements with each other that are nearer than arm's length. Upon information and belief, Aurobindo Pharma USA, Inc. participated in, assisted, and cooperated with Aurobindo Pharma Limited in the acts complained of herein.

55.    Upon information and belief, following any FDA approval of Aurobindo's ANDA, Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. will act in concert to distribute and sell Aurobindo's ANDA Product throughout the United States, including within Delaware.

56.    Upon information and belief, defendant Taro Pharmaceuticals U.S.A., Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business at 3 Skyline Drive, Hawthorne, New York 10532.  Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. is in the business of, among other things,

12

manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

57.     Upon information and belief, defendant Taro Pharmaceutical Industries, Ltd., is a corporation organized and existing under the laws of Israel with its principal place of business at 14 Hakitor Street, Haifa Bay 2624761, Israel.  Upon information and belief, Taro Pharmaceutical Industries, Ltd. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Taro Pharmaceuticals U.S.A., Inc.

58.     Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. is a wholly owned subsidiary of Taro Pharmaceutical Industries, Ltd.  Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. are collectively referred to herein as "Taro."

59.     Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. acted in concert to prepare and submit Taro's ANDA to the FDA.

60.     Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. know and intend that upon approval of Taro's ANDA, Taro Pharmaceutical Industries, Ltd. will manufacture Taro's ANDA Product and Taro Pharmaceuticals U.S.A., Inc. will directly or indirectly market, sell, and distribute Taro's ANDA Product throughout the United States, including in Delaware.  Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Taro's ANDA Product, and enter into agreements with each other that are nearer than arm's

13

length.    Upon information and belief, Taro Pharmaceutical Industries, Ltd. participated in, assisted, and cooperated with Taro Pharmaceuticals U.S.A., Inc. in the acts complained of herein.

61.    Upon information and belief, following any FDA approval of Taro's ANDA, Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. will act in concert to distribute and sell Taro's ANDA Product throughout the United States, including within Delaware.

## JURISDICTION

62.    Jurisdiction is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 and 2202.

63.    This Court has personal jurisdiction over each of the Defendants.

## Ascent

64.    Ascent is subject to personal jurisdiction in Delaware because, among other things, Ascent has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Ascent develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

65.    Ascent has previously used the process contemplated by the Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355(j) (the "Hatch-Waxman Act"), to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act

14

("FDCA"), 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

66. Upon information and belief, Ascent, with knowledge of the Hatch-Waxman Act process, directed Ascent's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Ascent's Notice Letter that Anacor's patents are invalid. Upon information and belief, Ascent knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

67. Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Ascent's filing of Ascent's ANDA, challenging Anacor's patent rights, in Delaware. Upon information and belief, Ascent knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware. Ascent has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Ascent's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

68. In addition, this Court has personal jurisdiction over Ascent because Ascent has engaged in patent litigation concerning an FDA-approved branded drug product in this district, did not contest personal jurisdiction in this district in that litigation, and availed itself of the rights and benefits of this Court by asserting counterclaims in this Court. *See Purdue Pharma L.P. v. Ascent Pharma. Inc.*, No. 18-083-RGA, D.I. 12 (D. Del. Feb. 16, 2018).

69. Upon information and belief, if Ascent's ANDA is approved, Ascent will directly or indirectly manufacture, market, sell, and/or distribute Ascent's ANDA Product within

15

the United States, including in Delaware, consistently with Ascent's practices for the marketing and distribution of other generic pharmaceutical products.  Upon information and belief, Ascent regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.   Upon information and belief, Ascent's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  Upon information and belief, Ascent's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware.  Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Ascent's ANDA Product is approved before the patents expire.

70.    Upon information and belief, Ascent derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Ascent and/or for which Ascent is the named applicant on approved ANDAs. Upon information and belief, various products for which Ascent is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**Zydus**

71.    Zydus Pharmaceuticals (USA) Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Zydus Pharmaceuticals (USA) Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to

16

Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

72.     Cadila Healthcare Ltd. is subject to personal jurisdiction in Delaware because, among other things, Cadila Healthcare Ltd., itself and through its wholly-owned indirect subsidiary Zydus Pharmaceuticals (USA) Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Cadila Healthcare Ltd., itself and through its indirect subsidiary Zydus Pharmaceuticals (USA) Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Cadila Healthcare Ltd. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Zydus Pharmaceuticals (USA) Inc. and therefore the activities of Zydus Pharmaceuticals (USA) Inc. in this jurisdiction are attributed to Cadila Healthcare Ltd.

73.     Zydus has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

74.     Upon information and belief, Zydus, with knowledge of the Hatch-Waxman Act process, directed Zydus's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Zydus's Notice Letter that Anacor's patents are invalid.

17

Upon information and belief, Zydus knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

75. Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Zydus's filing of Zydus's ANDA, challenging Anacor's patent rights, in Delaware. Upon information and belief, Zydus knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware. Zydus has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Zydus's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

76. In addition, this Court has personal jurisdiction over Zydus because Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court. *See, e.g.*, *Astrazeneca AB v. Zydus Pharma. (USA) Inc.*, No. 18-664-RGA, D.I. 9 (D. Del. June 22, 2018) (Zydus Pharmaceuticals (USA) Inc.); *Biogen Int'l gmBH v. Zydus Pharma. (USA) Inc.*, No. 18-623-LPS, D.I. 8 (D. Del. June 1, 2018) (same); *H. Lundbeck A/S v. Zydus Pharma. (USA) Inc.*, No. 18-150-LPS, D.I. 13 (D. Del. Apr. 2, 2018) (Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd.); *Millennium Pharma., Inc. v. Zydus Pharma. (USA) Inc.*, No. 17-423-CFC, D.I. 9 (D. Del. May 24, 2017) (same).

18

77. Upon information and belief, if Zydus's ANDA is approved, Zydus will directly or indirectly manufacture, market, sell, and/or distribute Zydus's ANDA Product within the United States, including in Delaware, consistently with Zydus's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Zydus regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Zydus's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Zydus's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Zydus's ANDA Product is approved before the patents expire.

78. Upon information and belief, Zydus derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Zydus and/or for which Zydus Pharmaceuticals (USA) Inc. or Cadila Healthcare Ltd. is the named applicant on approved ANDAs. Upon information and belief, various products for which Zydus Pharmaceuticals (USA) Inc. or Cadila Healthcare Ltd. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**Apotex**

79. Apotex Inc. is subject to personal jurisdiction in Delaware because, among other things, Apotex Inc., itself and through its wholly-owned subsidiary Apotex Corp., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should

19

reasonably anticipate being haled into court here.  Upon information and belief, Apotex Inc., itself and through its subsidiary Apotex Corp., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Apotex Inc. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Apotex Corp. and therefore the activities of Apotex Corp. in this jurisdiction are attributed to Apotex Inc.

80.     Apotex Corp. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware.  It therefore has consented to general jurisdiction in Delaware.  In addition, upon information and belief, Apotex Corp. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

81.     Apotex has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

20

82.     Upon information and belief, Apotex, with knowledge of the Hatch-Waxman Act process, directed Apotex's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Apotex's Notice Letter that Anacor's patents are invalid.  Upon information and belief, Apotex knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

83.     Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Apotex's filing of Apotex's ANDA, challenging Anacor's patent rights, in Delaware.  Upon information and belief, Apotex knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware.  Apotex has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Apotex's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

84.     In addition, this Court has personal jurisdiction over Apotex because Apotex Inc. and Apotex Corp. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court.  *See, e.g.*, *Novartis Pharma. Corp. v. Apotex Inc.*, No. 18-1038-LPS, D.I. 9 (D. Del. Aug. 8, 2018) (Apotex Inc. and Apotex Corp.); *Vanda Pharma. Inc. v. Apotex Inc.*, No. 18-689-CFC (D. Del. July 13, 2018) (same); *Bial-Portela & CA., S.A. v. Apotex Inc.*, No. 18-382-CFC, D.I. 11 (D. Del. May 31, 2018) (same); *Onyx Therapeutics, Inc. v. Apotex Inc.*, No. 18-132-LPS, D.I. 10 (D. Del. Feb. 26, 2018) (same).

21

85.     Upon information and belief, if Apotex's ANDA is approved, Apotex will directly or indirectly manufacture, market, sell, and/or distribute Apotex's ANDA Product within the United States, including in Delaware, consistently with Apotex's practices for the marketing and distribution of other generic pharmaceutical products.  Upon information and belief, Apotex regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.  Upon information and belief, Apotex's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  Upon information and belief, Apotex's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware.  Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Apotex's ANDA Product is approved before the patents expire.

86.     Upon information and belief, Apotex derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Apotex and/or for which Apotex Inc. or Apotex Corp. is the named applicant on approved ANDAs.  Upon information and belief, various products for which Apotex Inc. or Apotex Corp. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

### Amneal

87.     Amneal is subject to personal jurisdiction in Delaware because, among other things, Amneal has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Amneal is a

corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware. It therefore has consented to general jurisdiction in Delaware. In addition, upon information and belief, Amneal develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

88.    Amneal has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

89.    Upon information and belief, Amneal, with knowledge of the Hatch-Waxman Act process, directed Amneal's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Amneal's Notice Letter that Anacor's patents are invalid. Upon information and belief, Amneal knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

90.    Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Amneal's filing of Amneal's ANDA, challenging Anacor's patent rights, in Delaware. Upon information and belief, Amneal knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware. Amneal has been a litigant in connection with other infringement actions

under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Amneal's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

91.    In addition, this Court has personal jurisdiction over Amneal because Amneal regularly engages in patent litigation concerning FDA-approved branded drug products in this district, does not contest personal jurisdiction in this district, and has availed itself of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court. *See, e.g., Noven Pharma., Inc. v. Amneal Pharma. LLC*, No. 18-699-LPS, D.I. 7 (D. Del. May 22, 2018); *H. Lundbeck A/S v. Amneal Pharma. LLC*, No. 18-175-LPS, D.I. 16 (D. Del. Apr. 6, 2018); *Purdue Pharma L.P. v. Amneal Pharma. LLC*, No. 17-1421-RGA, D.I. 14 (D. Del. Nov. 13, 2017); *Teva Pharma. USA, Inc. v. Amneal Pharma. LLC*, No. 17-992-GMS, D.I. 37 (D. Del. July 27, 2017).

92.    Upon information and belief, if Amneal's ANDA is approved, Amneal will directly or indirectly manufacture, market, sell, and/or distribute Amneal's ANDA Product within the United States, including in Delaware, consistently with Amneal's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Amneal regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Amneal's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Amneal's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial

24

effect within Delaware and would constitute infringement of Anacor's patents in the event that Amneal's ANDA Product is approved before the patents expire.

93.     Upon information and belief, Amneal derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Amneal and/or for which Amneal is the named applicant on approved ANDAs. Upon information and belief, various products for which Amneal is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**Perrigo**

94.     Perrigo Pharma International DAC is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. Upon information and belief, Perrigo Pharma International DAC develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

95.     Perrigo Company plc is subject to personal jurisdiction in Delaware because, among other things, Perrigo Company plc, itself and through its wholly-owned indirect subsidiary Perrigo Pharma International DAC, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. Upon information and belief, Perrigo Company plc, itself and through its indirect subsidiary Perrigo Pharma International DAC, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of

25

Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Perrigo Company plc is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Perrigo Pharma International DAC and therefore the activities of Perrigo Pharma International DAC in this jurisdiction are attributed to Perrigo Company plc.

96.     Perrigo has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

97.     Upon information and belief, Perrigo, with knowledge of the Hatch-Waxman Act process, directed Perrigo's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Perrigo's Notice Letter that Anacor's patents are invalid.  Upon information and belief, Perrigo knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

98.     Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Perrigo's filing of Perrigo's ANDA, challenging Anacor's patent rights, in Delaware.  Upon information and belief, Perrigo knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware.  Perrigo has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Perrigo's

Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

99.    Upon information and belief, if Perrigo's ANDA is approved, Perrigo will directly or indirectly manufacture, market, sell, and/or distribute Perrigo's ANDA Product within the United States, including in Delaware, consistently with Perrigo's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Perrigo regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Perrigo's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Perrigo's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Perrigo's ANDA Product is approved before the patents expire.

100.    Upon information and belief, Perrigo derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Perrigo and/or for which Perrigo Pharma International DAC or Perrigo Company plc is the named applicant on approved ANDAs. Upon information and belief, various products for which Perrigo Pharma International DAC or Perrigo Company plc is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**Aleor**

101.    Aleor is subject to personal jurisdiction in Delaware because, among other things, Aleor has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Aleor develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

102.    Aleor has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

103.    Upon information and belief, Aleor, with knowledge of the Hatch-Waxman Act process, directed Aleor's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Aleor's Notice Letter that Anacor's patents are invalid. Upon information and belief, Aleor knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

104.    Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Aleor's filing of Aleor's ANDA, challenging Anacor's patent rights, in Delaware.  Upon information and belief, Aleor knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property

28

held in Delaware. Aleor has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Aleor's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

105.    Upon information and belief, if Aleor's ANDA is approved, Aleor will directly or indirectly manufacture, market, sell, and/or distribute Aleor's ANDA Product within the United States, including in Delaware, consistently with Aleor's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Aleor regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Aleor's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Aleor's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Aleor's ANDA Product is approved before the patents expire.

106.    Upon information and belief, Aleor derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Aleor and/or for which Aleor is the named applicant on approved ANDAs. Upon information and belief, various products for which Aleor is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

29

**Cipla**

107.    Cipla Limited is subject to personal jurisdiction in Delaware because, among other things, Cipla Limited, itself and through its wholly-owned subsidiary Cipla USA, Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Cipla Limited, itself and through its wholly-owned subsidiary Cipla USA, Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Cipla Limited is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Cipla USA, Inc. and therefore the activities of Cipla USA, Inc. in this jurisdiction are attributed to Cipla Limited.

108.    Cipla USA, Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Cipla USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware.  It therefore has consented to general jurisdiction in Delaware.  In addition, upon information and belief, Cipla USA, Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

30

109.     Cipla has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

110.     Upon information and belief, Cipla, with knowledge of the Hatch-Waxman Act process, directed Cipla's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Cipla's Notice Letter that Anacor's patents are invalid.   Upon information and belief, Cipla knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

111.     Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Cipla's filing of Cipla's ANDA, challenging Anacor's patent rights, in Delaware.   Upon information and belief, Cipla knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware.  Cipla has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Cipla's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

112.     In addition, this Court has personal jurisdiction over Cipla because Cipla Limited and Cipla USA, Inc. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have purposefully availed themselves of the rights and benefits of this Court by asserting claims

31

and/or counterclaims in this Court. *See, e.g.*, *H. Lundbeck A/S v. Cipla Ltd.*, No. 18-753-LPS, D.I. 9 (D. Del. June 5, 2018) (Cipla Limited and Cipla USA, Inc.); *Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. 18-598-LPS, D.I. 8 (D. Del. May 16, 2018) (same); *Pharmacyclics LLC v. Cipla Ltd.*, No. 18-247-CFC, D.I. 14 (D. Del. Apr. 25, 2018) (same); *ViiV Healthcare Co. v. Cipla Ltd.*, No. 17-1741-MSG, D.I. 11 (D. Del. Dec. 22, 2017) (same).

113.    Upon information and belief, if Cipla's ANDA is approved, Cipla will directly or indirectly manufacture, market, sell, and/or distribute Cipla's ANDA Product within the United States, including in Delaware, consistently with Cipla's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Cipla regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Cipla's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Cipla's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Cipla's ANDA Product is approved before the patents expire.

114.    Upon information and belief, Cipla derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Cipla and/or for which Cipla Limited or Cipla USA, Inc. is the named applicant on approved ANDAs. Upon information and belief, various products for which Cipla Limited or

32

Cipla USA, Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**Aurobindo**

115.     Aurobindo Pharma Limited is subject to personal jurisdiction in Delaware because, among other things, Aurobindo Pharma Limited, itself and through its wholly-owned subsidiary Aurobindo Pharma USA, Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Aurobindo Pharma Limited, itself and through its wholly-owned subsidiary Aurobindo Pharma USA, Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Aurobindo Pharma Limited is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Aurobindo Pharma USA, Inc. and therefore the activities of Aurobindo Pharma USA, Inc. in this jurisdiction are attributed to Aurobindo Pharma Limited.

116.     Aurobindo Pharma USA, Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Aurobindo Pharma USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware.  It therefore has consented to general jurisdiction in Delaware.  In addition, upon information and belief, Aurobindo Pharma USA, Inc. develops,

33

manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

117.   Aurobindo has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

118.   Upon information and belief, Aurobindo, with knowledge of the Hatch-Waxman Act process, directed Aurobindo's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Aurobindo's Notice Letter that Anacor's patents are invalid.   Upon information and belief, Aurobindo knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

119.   Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Aurobindo's filing of Aurobindo's ANDA, challenging Anacor's patent rights, in Delaware.   Upon information and belief, Aurobindo knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware.   Aurobindo has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Aurobindo's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

120.    In addition, this Court has personal jurisdiction over Aurobindo because Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have purposefully availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court. *See, e.g.*, *Astellas Pharma Inc. v. Aurobindo Pharma Ltd.*, No. 18-932-RGA, D.I. 9 (D. Del. Aug. 10, 2018) (Aurobindo Pharma Limited); *Allergan Sales, LLC v. Aurobindo Pharma Ltd.*, No. 16-1032-LPS, D.I. 8 (D. Del. Jan. 21, 2016) (Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc.); *Bayer Intellectual Property gmBH v. Aurobindo Pharma Ltd.*, No. 15-902-SLR, D.I. 59 (D. Del. Dec. 21, 2015) (same); *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*, No. 14-1203-LPS, D.I. 9 (D. Del. Nov. 17, 2014) (same).

121.    Upon information and belief, if Aurobindo's ANDA is approved, Aurobindo will directly or indirectly manufacture, market, sell, and/or distribute Aurobindo's ANDA Product within the United States, including in Delaware, consistently with Aurobindo's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Aurobindo regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Aurobindo's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Aurobindo's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of

35

Anacor's patents in the event that Aurobindo's ANDA Product is approved before the patents expire.

122.    Upon information and belief, Aurobindo derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Aurobindo and/or for which Aurobindo Pharma Limited or Aurobindo Pharma USA, Inc. is the named applicant on approved ANDAs.  Upon information and belief, various products for which Aurobindo Pharma Limited or Aurobindo Pharma USA, Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

## Taro

123.    Taro Pharmaceuticals U.S.A., Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Taro Pharmaceuticals U.S.A., Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

124.    Taro Pharmaceuticals Industries, Ltd. is subject to personal jurisdiction in Delaware because, among other things, Taro Pharmaceuticals Industries, Ltd. itself and through its wholly-owned subsidiary Taro Pharmaceuticals U.S.A., Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Taro Pharmaceuticals Industries, Ltd., itself and through its subsidiary Taro Pharmaceuticals U.S.A., Inc., develops, manufactures, imports,

markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware. In addition, Taro Pharmaceuticals Industries, Ltd. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Taro Pharmaceuticals U.S.A., Inc. and therefore the activities of Taro Pharmaceuticals U.S.A., Inc. in this jurisdiction are attributed to Taro Pharmaceuticals Industries, Ltd.

125. Taro has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

126. Upon information and belief, Taro, with knowledge of the Hatch-Waxman Act process, directed Taro's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Taro's Notice Letter that Anacor's patents are invalid. Upon information and belief, Taro knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

127. Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Taro's filing of Taro's ANDA, challenging Anacor's patent rights, in Delaware. Upon information and belief, Taro knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware. Taro has been a litigant in connection with other infringement actions under the

Hatch-Waxman Act, and reasonably should have anticipated that by sending Taro's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

128.   In addition, this Court has personal jurisdiction over Taro because Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court.  *See, e.g.*, *Allergan, Inc. v. Taro Pharma. Indus. Ltd.*, No. 17-663-JFB-SRF, D.I. 10 (D. Del. July 20, 2017) (Taro Pharmaceutical Industries, Ltd.); *Bayer Intellectual Property gmBH v. Taro Pharma. Indus. Ltd.*, No. 17-462-RGA, D.I. 11 (D. Del. June 23, 2017) (Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd.); *Vanda Pharma. Inc. v. Taro Pharma. USA, Inc.*, No. 15-920-GMS, D.I. 11 (D. Del. Dec. 28, 2015) (same); *Salix Pharma., Inc. v. Taro Pharma U.S.A., Inc.*, No. 15-900-SLR, D.I. 11 (D. Del. Jan. 28, 2016) (Taro Pharmaceuticals U.S.A., Inc.).

129.   Upon information and belief, if Taro's ANDA is approved, Taro will directly or indirectly manufacture, market, sell, and/or distribute Taro's ANDA Product within the United States, including in Delaware, consistently with Taro's practices for the marketing and distribution of other generic pharmaceutical products.  Upon information and belief, Taro regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.  Upon information and belief, Taro's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  Upon information and belief, Taro's ANDA Product will be prescribed

by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Taro's ANDA Product is approved before the patents expire.

130. Upon information and belief, Taro derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Taro and/or for which Taro Pharmaceuticals U.S.A., Inc. or Taro Pharmaceutical Industries, Ltd. is the named applicant on approved ANDAs. Upon information and belief, various products for which Taro Pharmaceuticals U.S.A., Inc. or Taro Pharmaceutical Industries, Ltd. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

### **VENUE**

131. Venue is proper in this district for Ascent pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Ascent, through its counsel, has consented to venue in this district for the purpose of this action.

132. Venue is proper in this district for Zydus Pharmaceuticals (USA) Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Zydus, through its counsel, has represented it will not object to venue in this district for the purpose of this action.

133. Venue is proper in this district for Cadila Healthcare Ltd. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Cadila Healthcare Ltd. is a corporation organized and existing under the laws of the Republic of India and is subject to personal jurisdiction in this judicial district.

134.   Venue is proper in this district for Apotex Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Apotex Inc. is a corporation organized and existing under the laws of Canada and is subject to personal jurisdiction in this judicial district.

135.   Venue is proper in this district for Apotex Corp. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

136.   Venue is proper in this district for Amneal pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Amneal is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

137.   Venue is proper in this district for Perrigo Pharma International DAC pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Perrigo Pharma International DAC is a corporation organized and existing under the laws of Ireland and is subject to personal jurisdiction in this judicial district.

138.   Venue is proper in this district for Perrigo Company plc pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Perrigo Company plc is a corporation organized and existing under the laws of Ireland and is subject to personal jurisdiction in this judicial district.

139.   Venue is proper in this district for Aleor pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Aleor is a corporation organized and existing under the laws of the Republic of India and is subject to personal jurisdiction in this judicial district.

140.   Venue is proper in this district for Cipla Limited pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Cipla Limited is a corporation organized and existing

under the laws of the Republic of India and is subject to personal jurisdiction in this judicial district.

141.   Venue is proper in this district for Cipla USA, Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Cipla USA, Inc. is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

142.   Venue is proper in this district for Aurobindo Pharma Limited pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Aurobindo Pharma Limited is a corporation organized and existing under the laws of the Republic of India and is subject to personal jurisdiction in this judicial district.

143.   Venue is proper in this district for Aurobindo Pharma USA, Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Aurobindo Pharma USA, Inc. is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

144.   Venue is proper in this district for Taro Pharmaceuticals U.S.A., Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Taro Pharmaceuticals U.S.A., Inc., through its counsel, has consented to venue in this district for the purpose of this action.

145.   Venue is proper in this district for Taro Pharmaceutical Industries, Ltd. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Taro Pharmaceutical Industries, Ltd. is a corporation organized and existing under the laws of the State of Israel and is subject to personal jurisdiction in this judicial district.

**THE PATENTS-IN-SUIT**

146.    Anacor incorporates each of the preceding paragraphs 1–145 as if fully set forth herein.

147.    The inventors named on each of the patents-in-suit are Stephen J. Baker, Tsutomu Akama, Vincent S. Hernandez, Karin M. Hold, Kirk Maples, Jacob J. Plattner, Virginia Sanders, Yong-Kang Zhang, Gregory T. Fieldson, and James J. Leyden (collectively, "the Named Inventors").

148.    The '938 patent, entitled "Boron-Containing Small Molecules" (Exhibit A hereto), was duly and legally issued on January 24, 2017, to Anacor, as assignee of the Named Inventors.

149.    The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole.

150.    The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the *Tinea unguium* infection is due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*, and wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole.

151. The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the *Tinea unguium* infection is due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*, wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

152. The '289 patent, entitled "Boron-Containing Small Molecules" (Exhibit B hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

153. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, a solvent system, and a chelating agent; wherein the 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, or a pharmaceutically acceptable salt thereof, is present in a concentration of about 5% w/w.

154. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof.

155. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine

tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the formulation is suitable for the treatment of onychomycosis of a toenail due to *Trichophyton rubrum* or *Trichophyton mentagrophytes* by topical application of the formulation to the toenail.

156.   The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof, is present in a concentration of from about 0.005% to about 2.0% w/w.

157.   The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof, is present in a concentration of from about 0.005% to about 2.0% w/w; wherein the formulation is suitable for the treatment of onychomycosis of a toenail due to *Trichophyton rubrum* or *Trichophyton mentagrophytes* by topical application of the formulation to the toenail.

158.   The '290 patent, entitled "Boron-Containing Small Molecules" (Exhibit C hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

159.   The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition

44

comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof.

160. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; and wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof.

161. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a

pharmaceutically acceptable salt thereof; and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

162.   The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further comprises ethanol and propylene glycol; and wherein the administering of the pharmaceutical composition occurs once a day.

163.   The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further

46

comprises ethanol and propylene glycol; and wherein the method inhibits leucyl tRNA synthetase in *Trichophyton rubrum*.

164. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further comprises ethanol and propylene glycol; and wherein the method inhibits leucyl tRNA synthetase in *Trichophyton mentagrophytes*.

165. The '823 patent, entitled "Boron-Containing Small Molecules" (Exhibit D hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

166. The '823 patent claims, *inter alia*, a method of delivering a compound, in a human, from a dorsal layer of a nail plate to a nail bed to treat onychomycosis caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising contacting the dorsal layer of the nail plate with a pharmaceutical composition comprising a compound that penetrates the nail plate, the compound being 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, thereby treating onychomycosis due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the pharmaceutical composition

is in the form of a topical solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

167. Anacor owns each of the patents-in-suit.

168. Kerydin, and methods of using Kerydin, are covered by one or more claims of each of the patents-in-suit, and each of the patents-in-suit has been listed in connection with Kerydin in the FDA's Orange Book.

169. Anacor will be substantially and irreparably damaged by infringement of the patents-in-suit.

## COUNT I – ASCENT'S INFRINGEMENT OF THE PATENTS-IN-SUIT

170. Anacor incorporates each of the preceding paragraphs 1–169 as if fully set forth herein.

171. In Ascent's Notice Letter, Ascent notified Anacor of the submission of Ascent's ANDA to the FDA. The purpose of that submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Ascent's ANDA Product prior to the expiration of the patents-in-suit.

172. In its Notice Letter, Ascent also notified Anacor that, as part of its ANDA, Ascent had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Ascent submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Ascent's ANDA Product.

173. Ascent's ANDA Product, and the use of Ascent's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

174. In its Notice Letter, Ascent did not contest infringement of the patents-in-suit.

175. Ascent has knowledge of the each of the patents-in-suit.

176. Ascent's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

177. Upon information and belief, Ascent will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

178. The manufacture, use, sale, offer for sale, or importation of Ascent's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 173.

179. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Ascent's ANDA Product in accordance with, and as directed by Ascent's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 173.

180. Upon information and belief, Ascent plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

181. Upon information and belief, Ascent knows that Ascent's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Ascent's ANDA Product is not a staple article or commodity of commerce, and that Ascent's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Ascent plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Ascent's ANDA.

182. Notwithstanding Ascent's knowledge of the claims of the patents-in-suit, Ascent has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Ascent's ANDA Product with its product labeling following upon FDA approval of Ascent's ANDA prior to the expiration of the patents-in-suit.

183. The foregoing actions by Ascent constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

184. Upon information and belief, Ascent has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

185.    Unless Ascent is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

### COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT BY ASCENT OF THE PATENTS-IN-SUIT

186.    Anacor incorporates each of the preceding paragraphs 1–185 as if fully set forth herein.

187.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Ascent on the other regarding Ascent's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

188.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Ascent's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

### COUNT III – ZYDUS'S INFRINGEMENT OF THE PATENTS-IN-SUIT

189.    Anacor incorporates each of the preceding paragraphs 1–188 as if fully set forth herein.

190.    In Zydus's Notice Letter, Zydus notified Anacor that it had submitted Zydus's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Zydus's ANDA Product prior to the expiration of the patents-in-suit.

191.    In its Notice Letter, Zydus also notified Anacor that, as part of its ANDA, Zydus had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the

51

FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Zydus submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Zydus's ANDA Product.

192. Zydus's ANDA Product, and the use of Zydus's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

193. In its Notice Letter, Zydus did not contest infringement of the patents-in-suit.

194. Zydus has knowledge of the each of the patents-in-suit.

195. Zydus's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

196. Upon information and belief, Zydus will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

197. The manufacture, use, sale, offer for sale, or importation of Zydus's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 192.

198.   Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Zydus's ANDA Product in accordance with, and as directed by Zydus's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 192.

199.   Upon information and belief, Zydus plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

200.   Upon information and belief, Zydus knows that Zydus's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Zydus's ANDA Product is not a staple article or commodity of commerce, and that Zydus's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Zydus plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Zydus's ANDA.

201.   Notwithstanding Zydus's knowledge of the claims of the patents-in-suit, Zydus has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Zydus's ANDA Product with its product labeling following upon FDA approval of Zydus's ANDA prior to the expiration of the patents-in-suit.

202.   The foregoing actions by Zydus constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

203.   Upon information and belief, Zydus has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for

infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

204.  Unless Zydus is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT IV – DECLARATORY JUDGMENT OF INFRINGEMENT BY ZYDUS OF THE PATENTS-IN-SUIT

205.  Anacor incorporates each of the preceding paragraphs 1–204 as if fully set forth herein.

206.  The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Zydus on the other regarding Zydus's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

207.  The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Zydus's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

## COUNT V – APOTEX'S INFRINGEMENT OF THE PATENTS-IN-SUIT

208.  Anacor incorporates each of the preceding paragraphs 1–207 as if fully set forth herein.

209.  In Apotex's Notice Letter, Apotex notified Anacor that it had submitted Apotex's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Apotex's ANDA Product prior to the expiration of the patents-in-suit.

210.    In its Notice Letter, Apotex also notified Anacor that, as part of its ANDA, Apotex had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit.  Upon information and belief, Apotex submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Apotex's ANDA Product.

211.    Apotex's ANDA Product, and the use of Apotex's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

212.    In its Notice Letter, Apotex did not contest infringement of the patents-in-suit.

213.    Apotex has knowledge of each of the patents-in-suit.

214.    Apotex's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

215.    Upon information and belief, Apotex will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

216.    The manufacture, use, sale, offer for sale, or importation of Apotex's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 211.

217.    Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Apotex's ANDA Product in accordance with, and as directed by Apotex's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 211.

218.    Upon information and belief, Apotex plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

219.    Upon information and belief, Apotex knows that Apotex's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Apotex's ANDA Product is not a staple article or commodity of commerce, and that Apotex's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use.    Upon information and belief, Apotex plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Apotex's ANDA.

220.    Notwithstanding Apotex's knowledge of the claims of the patents-in-suit, Apotex has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Apotex's ANDA Product with its product labeling following upon FDA approval of Apotex's ANDA prior to the expiration of the patents-in-suit.

221. The foregoing actions by Apotex constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

222. Upon information and belief, Apotex has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

223. Unless Apotex is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT VI – DECLARATORY JUDGMENT OF INFRINGEMENT BY APOTEX OF THE PATENTS-IN-SUIT

224. Anacor incorporates each of the preceding paragraphs 1–223 as if fully set forth herein.

225. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Apotex on the other regarding Apotex's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

226. The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Apotex's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

57

## COUNT VII – AMNEAL'S INFRINGEMENT OF THE PATENTS-IN-SUIT

227.    Anacor incorporates each of the preceding paragraphs 1–226 as if fully set forth herein.

228.    In Amneal's Notice Letter, Amneal notified Anacor that it had submitted Amneal's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Amneal's ANDA Product prior to the expiration of the patents-in-suit.

229.    In its Notice Letter, Amneal also notified Anacor that, as part of its ANDA, Amneal had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit.  Upon information and belief, Amneal submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Amneal's ANDA Product.

230.    Amneal's ANDA Product, and the use of Amneal's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

231.    In its Notice Letter, Amneal did not contest infringement of the '938 patent, the '290 patent, the '823 patent, or claims 1–5 or 7–15 of the '289 patent.

232.    Amneal has knowledge of each of the patents-in-suit.

233.    Amneal's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its

58

ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

234. Upon information and belief, Amneal will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

235. The manufacture, use, sale, offer for sale, or importation of Amneal's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 230.

236. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Amneal's ANDA Product in accordance with, and as directed by Amneal's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 230.

237. Upon information and belief, Amneal plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

238. Upon information and belief, Amneal knows that Amneal's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Amneal's ANDA Product is not a staple article or commodity of commerce, and that Amneal's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Amneal plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Amneal's ANDA.

59

239.    Notwithstanding Amneal's knowledge of the claims of the patents-in-suit, Amneal has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Amneal's ANDA Product with its product labeling following upon FDA approval of Amneal's ANDA prior to the expiration of the patents-in-suit.

240.    The foregoing actions by Amneal constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

241.    Upon information and belief, Amneal has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

242.    Unless Amneal is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT VIII – DECLARATORY JUDGMENT OF INFRINGEMENT BY AMNEAL OF THE PATENTS-IN-SUIT

243.    Anacor incorporates each of the preceding paragraphs 1–242 as if fully set forth herein.

244.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Amneal on the other regarding Amneal's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

245.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Amneal's ANDA Product, or any other drug product which is covered

by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

## COUNT IX – PERRIGO'S INFRINGEMENT OF THE PATENTS-IN-SUIT

246. Anacor incorporates each of the preceding paragraphs 1–245 as if fully set forth herein.

247. In Perrigo's Notice Letter, Perrigo notified Anacor that it had submitted Perrigo's ANDA to the FDA. The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Perrigo's ANDA Product prior to the expiration of the patents-in-suit.

248. In its Notice Letter, Perrigo also notified Anacor that, as part of its ANDA, Perrigo had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Perrigo submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Perrigo's ANDA Product.

249. Perrigo's ANDA Product, and the use of Perrigo's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

250. In its Notice Letter, Perrigo did not contest infringement of the '938 patent, the '290 patent, the '823 patent, or claims 1–5 or 7–15 of the '289 patent.

251. Perrigo has knowledge of the each of the patents-in-suit.

61

252. Perrigo's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

253. Upon information and belief, Perrigo will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

254. The manufacture, use, sale, offer for sale, or importation of Perrigo's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 249.

255. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Perrigo's ANDA Product in accordance with, and as directed by Perrigo's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 249.

256. Upon information and belief, Perrigo plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

257. Upon information and belief, Perrigo knows that Perrigo's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Perrigo's ANDA Product is not a staple article or commodity of commerce, and that Perrigo's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Perrigo plans and intends to, and will, contribute to

infringement of the patents-in-suit immediately and imminently upon approval of Perrigo's ANDA.

258.   Notwithstanding Perrigo's knowledge of the claims of the patents-in-suit, Perrigo has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Perrigo's ANDA Product with its product labeling following upon FDA approval of Perrigo's ANDA prior to the expiration of the patents-in-suit.

259.   The foregoing actions by Perrigo constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

260.   Upon information and belief, Perrigo has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

261.   Unless Perrigo is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT X – DECLARATORY JUDGMENT OF INFRINGEMENT BY PERRIGO OF THE PATENTS-IN-SUIT

262.   Anacor incorporates each of the preceding paragraphs 1–261 as if fully set forth herein.

263.   The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Perrigo on the other regarding Perrigo's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

264.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Perrigo's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

### COUNT XI – ALEOR'S INFRINGEMENT OF THE PATENTS-IN-SUIT

265.    Anacor incorporates each of the preceding paragraphs 1–264 as if fully set forth herein.

266.    In Aleor's Notice Letter, Aleor notified Anacor that it had submitted Aleor's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Aleor's ANDA Product prior to the expiration of the patents-in-suit.

267.    In its Notice Letter, Aleor also notified Anacor that, as part of its ANDA, Aleor had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit.  Upon information and belief, Aleor submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Aleor's ANDA Product.

268.    Aleor's ANDA Product, and the use of Aleor's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

269. In its Notice Letter, Aleor did not contest infringement of the patents-in-suit.

270. Aleor has knowledge of the each of the patents-in-suit.

271. Aleor's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

272. Upon information and belief, Aleor will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

273. The manufacture, use, sale, offer for sale, or importation of Aleor's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 268.

274. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Aleor's ANDA Product in accordance with, and as directed by Aleor's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 268.

275. Upon information and belief, Aleor plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

276. Upon information and belief, Aleor knows that Aleor's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Aleor's ANDA Product is not a staple article or commodity of commerce, and that Aleor's

ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Aleor plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Aleor's ANDA.

277.   Notwithstanding Aleor's knowledge of the claims of the patents-in-suit, Aleor has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Aleor's ANDA Product with its product labeling following upon FDA approval of Aleor's ANDA prior to the expiration of the patents-in-suit.

278.   The foregoing actions by Aleor constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

279.   Upon information and belief, Aleor has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

280.   Unless Aleor is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT XII – DECLARATORY JUDGMENT OF INFRINGEMENT BY ALEOR OF THE PATENTS-IN-SUIT

281.   Anacor incorporates each of the preceding paragraphs 1–280 as if fully set forth herein.

282.   The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on

66

the one hand and Aleor on the other regarding Aleor's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

283.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Aleor's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

**COUNT XIII – CIPLA'S INFRINGEMENT OF THE PATENTS-IN-SUIT**

284.    Anacor incorporates each of the preceding paragraphs 1–283 as if fully set forth herein.

285.    In Cipla's Notice Letter, Cipla notified Anacor that it had submitted Cipla's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Cipla's ANDA Product prior to the expiration of the patents-in-suit.

286.    In its Notice Letter, Cipla also notified Anacor that, as part of its ANDA, Cipla had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit.  Upon information and belief, Cipla submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Cipla's ANDA Product.

287.    Cipla's ANDA Product, and the use of Cipla's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following:

claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

288.   In its Notice Letter, Cipla did not contest infringement of the patents-in-suit.

289.   Cipla has knowledge of the each of the patents-in-suit.

290.   Cipla's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

291.   Upon information and belief, Cipla will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

292.   The manufacture, use, sale, offer for sale, or importation of Cipla's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 287.

293.   Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Cipla's ANDA Product in accordance with, and as directed by Cipla's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 287.

294.   Upon information and belief, Cipla plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

295. Upon information and belief, Cipla knows that Cipla's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Cipla's ANDA Product is not a staple article or commodity of commerce, and that Cipla's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Cipla plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Cipla's ANDA.

296. Notwithstanding Cipla's knowledge of the claims of the patents-in-suit, Cipla has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Cipla's ANDA Product with its product labeling following upon FDA approval of Cipla's ANDA prior to the expiration of the patents-in-suit.

297. The foregoing actions by Cipla constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

298. Upon information and belief, Cipla has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

299. Unless Cipla is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury. Anacor has no adequate remedy at law.

## COUNT XIV – DECLARATORY JUDGMENT OF INFRINGEMENT BY CIPLA OF THE PATENTS-IN-SUIT

300.    Anacor incorporates each of the preceding paragraphs 1–299 as if fully set forth herein.

301.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Cipla on the other regarding Cipla's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

302.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Cipla's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

## COUNT XV – AUROBINDO'S INFRINGEMENT OF THE PATENTS-IN-SUIT

303.    Anacor incorporates each of the preceding paragraphs 1–302 as if fully set forth herein.

304.    In Aurobindo's Notice Letter, Aurobindo notified Anacor that it had submitted Aurobindo's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Aurobindo's ANDA Product prior to the expiration of the patents-in-suit.

305.    In its Notice Letter, Aurobindo also notified Anacor that, as part of its ANDA, Aurobindo had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Aurobindo submitted its ANDA to the FDA containing a

certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Aurobindo's ANDA Product.

306.   Aurobindo's ANDA Product, and the use of Aurobindo's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

307.   In its Notice Letter, Aurobindo did not contest infringement of the patents-in-suit.

308.   Aurobindo has knowledge of the each of the patents-in-suit.

309.   Aurobindo's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

310.   Upon information and belief, Aurobindo will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

311.   The manufacture, use, sale, offer for sale, or importation of Aurobindo's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 306.

312.   Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Aurobindo's ANDA Product in accordance with, and as directed by Aurobindo's

proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 306.

313.    Upon information and belief, Aurobindo plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

314.    Upon information and belief, Aurobindo knows that Aurobindo's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Aurobindo's ANDA Product is not a staple article or commodity of commerce, and that Aurobindo's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use.  Upon information and belief, Aurobindo plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Aurobindo's ANDA.

315.    Notwithstanding Aurobindo's knowledge of the claims of the patents-in-suit, Aurobindo has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Aurobindo's ANDA Product with its product labeling following upon FDA approval of Aurobindo's ANDA prior to the expiration of the patents-in-suit.

316.    The foregoing actions by Aurobindo constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

317.    Upon information and belief, Aurobindo has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

318.     Unless Aurobindo is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT XVI – DECLARATORY JUDGMENT OF INFRINGEMENT BY AUROBINDO OF THE PATENTS-IN-SUIT

319.     Anacor incorporates each of the preceding paragraphs 1–318 as if fully set forth herein.

320.     The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Aurobindo on the other regarding Aurobindo's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

321.     The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Aurobindo's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

## COUNT XVII – TARO'S INFRINGEMENT OF THE PATENTS-IN-SUIT

322.     Anacor incorporates each of the preceding paragraphs 1–321 as if fully set forth herein.

323.     In Taro's Notice Letter, Taro notified Anacor that it had submitted Taro's ANDA to the FDA.  The purpose of the submission of the ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Taro's ANDA Product prior to the expiration of the patents-in-suit.

324.     In its Notice Letter, Taro also notified Anacor that, as part of its ANDA, Taro had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA,

21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Taro submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Taro's ANDA Product.

325. Taro's ANDA Product, and the use of Taro's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

326. In its Notice Letter, Taro did not contest infringement of the patents-in-suit.

327. Taro has knowledge of the each of the patents-in-suit.

328. Taro's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

329. Upon information and belief, Taro will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

330. The manufacture, use, sale, offer for sale, or importation of Taro's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 325.

331.    Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Taro's ANDA Product in accordance with, and as directed by Taro's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 325.

332.    Upon information and belief, Taro plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

333.    Upon information and belief, Taro knows that Taro's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Taro's ANDA Product is not a staple article or commodity of commerce, and that Taro's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use.  Upon information and belief, Taro plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Taro's ANDA.

334.    Notwithstanding Taro's knowledge of the claims of the patents-in-suit, Taro has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Taro's ANDA Product with its product labeling following upon FDA approval of Taro's ANDA prior to the expiration of the patents-in-suit.

335.    The foregoing actions by Taro constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

336.    Upon information and belief, Taro has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for

infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

337.    Unless Taro is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury.  Anacor has no adequate remedy at law.

## COUNT XVIII – DECLARATORY JUDGMENT OF INFRINGEMENT BY TARO OF THE PATENTS-IN-SUIT

338.    Anacor incorporates each of the preceding paragraphs 1–337 as if fully set forth herein.

339.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Taro on the other regarding Taro's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

340.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Taro's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

WHEREFORE, Anacor requests the following relief:

(a)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Ascent's submission to the FDA of Ascent's ANDA;

(b)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Zydus's submission to the FDA of Zydus's ANDA;

(c)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Apotex's submission to the FDA of Apotex's ANDA;

76

(d)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Amneal's submission to the FDA of Amneal's ANDA;

(e)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Perrigo's submission to the FDA of Perrigo's ANDA;

(f)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Aleor's submission to the FDA of Aleor's ANDA;

(g)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Cipla's submission to the FDA of Cipla's ANDA;

(h)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Aurobindo's submission to the FDA of Aurobindo's ANDA;

(i)    A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Taro's submission to the FDA of Taro's ANDA;

(j)    A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of Defendants' ANDA Products, or any other drug product that infringes or the use of which infringes one or more of the patents-in-suit, be not earlier than the latest of the expiration dates of said patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(k)    A preliminary and permanent injunction enjoining Defendants, and all persons acting in concert with Defendants, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of Defendants' ANDA Products, or any other drug product covered by or whose use is covered by one or more of the patents-in-suit, prior to the expiration of said patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(l)     A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of Defendants' ANDA Products, or any other drug product which is covered by or whose use is covered by one-or-more of the patents-in-suit, prior to the expiration of said patents, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents;

(m)     A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(n)     Costs and expenses in this action; and

(o)     Such further and other relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mdellinger@mnat.com

OF COUNSEL:

Aaron P. Maurer
David I. Berl
David M. Horniak
Anthony Sheh
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiff*
*Anacor Pharmaceuticals, Inc.*

October 25, 2018

78